**HELVERING, Commissioner of Internal Revenue, v. GULF, M. & N. R. CO.**

**GULF, M. & N. R. CO. v. HELVERING, Commissioner of Internal Revenue.**

**Nos. 5853, 5854.**

Court of Appeals of the District of Columbia.

Argued Nov. 8, 1933.
Decided May 14, 1934.

Motion for Modification Granted June 25, 1934.

G. A. Youngquist, Sewall Key, Morton K. Rothschild, Sp. Assts. to the Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and E. C. Algire, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Geo. E. H. Goodner, of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

These cases relate to income taxes for the years 1920 to 1926. They were heard together by the Board of Tax Appeals, and will be considered together by us in this decision.

The issues arise upon the consolidated income tax return for the year 1920 of the Gulf, Mobile & Northern Railroad Company, and its affiliates, the Meridian & Memphis Railway Company and the Jackson & Eastern Railway Company.

The Gulf, Mobile & Northern Railroad Company, hereinafter called the railroad company, was the owner and in control of a railroad system extending through several southwestern states, and on December 26, 1917, its properties, including those of the affiliated companies, were taken over by proclamation of the President of the United States, acting under the Federal Control Act of March 21, 1918, and were operated by the Director General of Railroads during the period of federal control; namely, from January 1, 1918, to midnight February 29, 1920.

Prior to federal control the railroad company had commenced the construction of a line of railroad in Mississippi known as the "Blodgett Branch," and an extension of its railroad in Tennessee, known as the "Jackson Extension." Both of these projects were for the purpose of removing timber from virgin territories. The "Blodgett Branch" was completed and put into operation during the year 1918, and the "Jackson Extension" was completed and put into operation in September, 1919. These extensions when completed were likewise taken under federal control and operated by the Director General as part of the system.

The Federal Control Act, enacted March 21, 1918 (40 Stat. 451), provides in part as follows:

"Sec. 1. That the President, having in

time of war taken over the possession, use, control, and operation (called herein Federal control) of certain railroads and systems of transportation (called herein carriers), is hereby authorized to agree with and to guarantee to any such carrier making operating returns to the Interstate Commerce Commission, that during the period of such Federal control it shall receive as just compensation an annual sum, payable from time to time in reasonable installments, for each year and pro rata for any fractional year of such Federal control, not exceeding a sum equivalent as nearly as may be to its average annual railway operating income for the three years ended June thirtieth, nineteen hundred and seventeen. * * *

"Sec. 2. That if no such agreement is made, or pending the execution of an agreement, the President may nevertheless pay to any carrier while under Federal control an annual amount, payable in reasonable installments, not exceeding ninety per centum of the estimated annual amount of just compensation. * * *

"Sec. 4. That the just compensation * * * shall be increased by an amount reckoned at a reasonable rate per centum to be fixed by the President upon the cost of any additions and betterments, less retirements, and upon the cost of road extensions to the property of such carrier made by such carrier with the approval of or by order of the President while such property is under Federal control."

In this instance the railroad company did not enter into the "standard agreement"; its compensation therefore fell within the provisions of sections 2 and 4 of the act.

In the final settlement with the Director General in the year 1920, the railroad company was allowed the sums, respectively, of $75,000 and $56,521.02, as additional compensation to it for the use of its "Blodgett Branch" and "Jackson Extension," during parts of the federal control period. These amounts were based upon an estimate of the earnings which would have accrued to the railroad company during the period of federal control if the projects were put into operation and the railroad company had been permitted to operate them itself. No part of either of these amounts was included by the railroad company in the consolidated net taxable income return as reported to the Commissioner of Internal Revenue for the year 1920. The Commissioner, however, held that the total amounts thus received in 1920 constituted taxable income for that year, and de-

termined a deficiency accordingly, from which decision the railroad company appealed to the Board of Tax Appeals.

It appears that the railroad company and its affiliates kept their accounts and made their tax returns upon the accrual basis, and the Board of Tax Appeals held that the amounts thus received by them constituted taxable income accruing during the years 1918, 1919, and part of 1920, comprising the period of federal control, and were to be prorated proportionately during such periods. Accordingly the Board redetermined the deficiency declared by the Commissioner, and held that only such proportion of the compensation aforesaid as was proratably allocable to the period from January 1 to March 1, 1920, should be included in the return for the year 1920.

■ The Commissioner, as petitioner in case No. 5853, supra, contends that the Board of Tax Appeals erred in holding that the amount of compensation paid by the Director General to the railroad company for the use of the extensions should be assessed proratably during the period of federal control, contending that the amounts were not determined nor paid until the final settlement in 1920, and that they accrued in their entirety and were returnable in that year.

The question thus presented is whether the amounts paid as aforesaid by the Director General to the railroad company for the use of the extensions in the year 1920, but covering the entire period of federal control, should be allocated proratably for income tax purposes between the two years and two months of federal control, or should be returnable in their entirety for the year 1920. The Board, as stated, held against the Commissioner upon this proposition.

It has been invariably held by the Board of Tax Appeals and the courts that the "just compensation," allowed and paid by the Director General in the final settlement for use of a railroad company's property during the federal control period, constitutes income accruing proratably over the entire period of control. Appeal of Illinois Terminal Co., 5 B. T. A. 15; Kansas City Southern Ry. Co. v. Com'r, 16 B. T. A. 665, affirmed (8th C. C. A.) 52 F.(2d) 372; Midland Valley Railroad Co. v. Com'r, 19 B. T. A. 423, affirmed (10th C. C. A.) 57 F.(2d) 1042; Helvering v. St. Louis S. W. Ry. Co. (C. C. A.) 66 F.(2d) 633 (certiorari denied 54 S. Ct. 632, 78 L. Ed. ——, April 2, 1934); Continental Tie & Lumber Co. v. United States, 286 U. S. 290, 52 S. Ct. 529, 76 L. Ed. 1111. From

an income tax standpoint we are unable to see any difference between the compensation paid for the use of the property held and used throughout the federal control period and compensation for the use of property held and used during part of such period. The language of the act indicates that the compensation payable to the carriers should be payable in annual sums for the use of their property. Even if the compensation be determined and agreed upon at a later date and paid in a lump sum, it is still compensation which accrues during the period of control and use. It may be noted again that the taxpayer in this case was on the accrual basis of accounting and rendering tax returns. The question therefore is, When did the income under review accrue in contemplation of the act? The Board decided that it accrued proratably throughout the period during which the property was in the control and use of the government. This decision is sustained by the fact that in the respective years of federal control a reasonable estimate of "just compensation" could be made for the use of the two extensions and the facts upon which the obligation rested existed. It follows that the income in question accrued to the railroad company proratably during the control period as held by the Board of Tax Appeals. In our opinion, therefore, the decision of the Board of Tax Appeals in case No. 5853 was correct and should be affirmed.

In case No. 5854 the railroad company as petitioner complains of the determination of the Commissioner of Internal Revenue upon two grounds.

As a first cause of complaint it alleges that among the properties of the railroad company taken over by the President on December 3, 1917, were certain materials and supplies which had cost the company $286,-664.26. The Director General at the end of the control period turned back certain materials and supplies, the cost and value of which was $275,912.03. In the final settlement the company was allowed the sum of $61,314.18 on its claim for shortages in the inventory of materials and supplies turned back by the Director General as compared with those turned over to him at the beginning of the period.

In computing the company's net income for 1920, the Commissioner included therein as taxable income the sum of $50,561.95, arrived at by taking from the sum of the inventory of materials and supplies turned back plus the amount allowed taxpayer in the final settlement, the amount of the original inventory. The Board of Tax Appeals approved this action of the Commissioner. It is claimed by the company that this was error.

We cannot agree with this contention. Article 49 of Treasury Regulations 45 (1920) provides that, where the owner of property has transferred title by reason of the exercise of the power of eminent domain, and has received compensation in excess of its cost or value on March 1, 1913, and the owner does not elect to replace or restore the property, the transaction will be deemed to be completed, and the excess of the value received over the cost or value on March 1, 1913, is subject to tax as if resulting from a sale. This provision has been included in the Treasury Regulations from 1918 until 1933. The re-enactment of the statutory provision without material change must be deemed to constitute legislative approval of the administrative construction. Brewster v. Gage, 280 U. S. 327, 337, 50 S. Ct. 115, 74 L. Ed. 457.

The Circuit Court of Appeals for the Second Circuit upheld the regulations in question in Lehigh & Hudson River Ry. Co. v. Lucas, Commissioner, 36 F. (2d) 719, 720, certiorari denied 281 U. S. 748, 50 S. Ct. 353, 74 L. Ed. 1160. In that case, which involved similar circumstances, the court said: "Such a transaction is equivalent for tax purposes to a sale of the supplies at the agreed price. The act of 1918 (40 Stat. 1057) did not, indeed, expressly provide for gains arising from the requisition of property, but article 49 of the Regulations did: 'When the owner of property has lost or transferred title by reason of requisition or eminent domain * * * if the taxpayer does not elect to replace or restore the property, the transaction will then be deemed to be completed and the income shall be measured by the excess of the amount of the compensation over the cost of the property.' This article and article 50 prescribed the formalities by which the election should be manifested, with none of which the railway conformed. * * *"

In our opinion, the foregoing contention of the railroad company must be overruled.

As second cause of complaint the railroad company contends that from 1913 to 1916, inclusive, its subsidiary, the Meridian & Memphis Railway Company, sold its corporate bonds at a discount, and under the Interstate Commerce Commission's rules it set up on its books the amount of the discount as deferred charges to be amortized over the remaining life of the bonds; that the subsidiary company had consistently written off each

year the applicable part of such discount, and in each of the years 1924, 1925, and 1926 it wrote off $4,585.32. The railroad company accordingly claimed an equal sum as a deduction in the consolidated tax returns for those years. The Commissioner disallowed the deduction on the ground that the bonds had been purchased and were held by the affiliated railroad company, and that the sum of the annual amortization was an intercompany obligation, and was not deductible.

Article 636 of Treasury Regulations 65 relates to the Revenue Act of 1924 (43 Stat. 253), and provides that intercompany transactions are subject to elimination from the consolidated taxable net income of the affiliated corporations. Article 635 of Treasury Regulations 69 relating to the Revenue Act of 1926 (26 USCA) contains the same provision. In the instant case one member of the affiliated group acquired the bonds of another member. The Treasury Department has consistently construed such a transaction to be an intercompany transaction and has consistently held that it should be eliminated from a return of the consolidated taxable net income. Old Mission Portland Cement Co. v. Com'r, 25 B. T. A. 305, affirmed (C. C. A. 9th) 69 F.(2d) 676, March 12, 1934. We conclude, therefore, that the Board was right in holding that no deduction was allowable in the consolidated return of the railroad companies because of the amount entered by the affiliated company upon its books for the annual amortization of its bonds which at the time were held by its associate company.

Accordingly in each of the two cases, to wit, No. 5853 and No. 5854, the decision of the Board of Tax Appeals is affirmed.

GRONER, Associate Justice, concurs in the conclusion.

### Modification.

PER CURIAM.

Now on this 25th day of June, 1934, the court, upon a reconsideration of its judgment in cases Nos. 5853 and 5854, enters a modification thereof to the following effect, to wit: It appearing that in the decision of the Board of Tax Appeals the sum of $4,000 of additional compensation paid to the petitioner, the Gulf, Mobile & Northern Railroad Company, for carrying the mails in 1916 and 1917, was included in petitioner's taxable income as determined for the year 1920, and that petitioner duly excepted thereto, and it appearing that the respondent, the Commis-

sioner of Internal Revenue, in his brief filed in this court in the present appeal, conceded that under the facts as found by the Board of Tax Appeals the additional compensation aforesaid for the transportation of mail should not be accrued during the year 1920 as was found and ordered by the Board, the court now modifies its decision as heretofore entered in case No. 5854 and affirms the decision of the Board made therein, but nevertheless reverses that part of the decision affecting the $4,000 item now referred to, with instructions that the said amount of $4,000 should not be considered as accrued in the year 1920, and that petitioner's taxes for that year be recomputed accordingly.