COMMISSIONER OF INTERNAL REVENUE *v.*
IDAHO POWER CO.

No. 73-263.   Argued February 27, 1974—Decided June 24, 1974

*Keith A. Jones* argued the cause for petitioner. With him on the briefs were *Solicitor General Bork, Assistant Attorney General Crampton,* and *Elmer J. Kelsey.*

*Frank Norton Kern* argued the cause for respondent. With him on the brief was *Lawrence Chase Wilson.*

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents the sole issue whether, for federal income tax purposes, a taxpayer is entitled to a deduction from gross income, under § 167 (a) of the Internal Revenue Code of 1954, 26 U. S. C. § 167 (a),[1] for depreciation on equipment the taxpayer owns and uses in the construction of its own capital facilities, or whether the capitalization provision of § 263 (a)(1) of the Code, 26 U. S. C. § 263 (a)(1),[2] bars the deduction.

---

[1] "§ 167. Depreciation.

"(a) General rule.

"There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income."

[2] "§ 263. Capital expenditures.

"(a) General rule.

[*Footnote 2 is continued on p. 4*]

The taxpayer claimed the deduction, but the Commissioner of Internal Revenue disallowed it. The Tax Court (Scott, J., in an opinion not reviewed by the full court) upheld the Commissioner's determination. 29 T. C. M. 383 (1970). The United States Court of Appeals for the Ninth Circuit, declining to follow a Court of Claims decision, *Southern Natural Gas Co.* v. *United States,* 188 Ct. Cl. 302, 372–380, 412 F. 2d 1222, 1264–1269 (1969), reversed. 477 F. 2d 688 (1973). We granted certiorari in order to resolve the apparent conflict between the Court of Claims and the Court of Appeals. 414 U. S. 999 (1973).

## I

Nearly all the relevant facts are stipulated. The taxpayer-respondent, Idaho Power Company, is a Maine corporation organized in 1915, with its principal place of business at Boise, Idaho. It is a public utility engaged in the production, transmission, distribution, and sale of electric energy. The taxpayer keeps its books and files its federal income tax returns on the calendar year accrual basis. The tax years at issue are 1962 and 1963.

For many years, the taxpayer has used its own equipment and employees in the construction of improvements and additions to its capital facilities.[3] The major work has consisted of transmission lines, transmission switching stations, distribution lines, distribution stations, and connecting facilities.

---

"No deduction shall be allowed for—

"(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate."

[3] For a period near the end of World War II, the taxpayer constructed all its capital improvements. At other times, outside contractors have performed part of this work. At the time of the trial of this tax case, the taxpayer had 140 employees engaged in new construction; it has had as many as 300 employees so engaged.

During 1962 and 1963, the tax years in question, taxpayer owned and used in its business a wide variety of automotive transportation equipment, including passenger cars, trucks of all descriptions, power-operated equipment, and trailers. Radio communication devices were affixed to the equipment and were used in its daily operations. The transportation equipment was used in part for operation and maintenance and in part for the construction of capital facilities having a useful life of more than one year.

On its books, the taxpayer used various methods of charging costs incurred in connection with its transportation equipment either to current expense or to capital accounts. To the extent the equipment was used in construction, the taxpayer charged depreciation of the equipment, as well as all operating and maintenance costs (other than pension contributions and social security and motor vehicle taxes) to the capital assets so constructed. This was done either directly or through clearing accounts in accordance with procedures prescribed by the Federal Power Commission and adopted by the Idaho Public Utilities Commission.

For federal income tax purposes, however, the taxpayer treated the depreciation on transportation equipment differently. It claimed as a deduction from gross income *all* the year's depreciation on such equipment, including that portion attributable to its use in constructing capital facilities. The depreciation was computed on a composite life of 10 years and under straight-line and declining-balance methods. The other operating and maintenance costs the taxpayer had charged on its books to capital were not claimed as current expenses and were not deducted.

To summarize: On its books, in accordance with Federal Power Commission-Idaho Public Utilities Commis-

sion prescribed methods, the taxpayer capitalized the construction-related depreciation, but for income tax purposes that depreciation increment was claimed as a deduction under § 167 (a).[4]

Upon audit, the Commissioner of Internal Revenue disallowed the deduction for the construction-related depreciation. He ruled that that depreciation was a nondeductible capital expenditure to which § 263 (a)(1) had application. He added the amount of the depreciation so disallowed to the taxpayer's adjusted basis in its capital facilities, and then allowed a deduction for an appropriate amount of depreciation on the addition, computed over the useful life (30 years or more) of the property constructed. A deduction for depreciation of the transportation equipment to the extent of its use in day-to-day operation and maintenance was also allowed. The result of these adjustments was the disallowance of depreciation, as claimed by the taxpayer on its returns, in the net amounts of $140,429.75 and $96,811.95 for 1962 and 1963, respectively. This gave rise to asserted deficiencies in taxpayer's income taxes for those two years of $73,023.47 and $50,342.21.

The Tax Court agreed with the decision of the Court of Claims in *Southern Natural Gas, supra,* and described that holding as one to the effect that "depreciation allocable to the use of the equipment in the construction of capital improvements was not deductible in the year the

---

[4] For 1962 and 1963 the taxpayer's gross construction additions were $8,235,440.22 and $5,988,139.56, respectively. Of these amounts, the taxpayer itself constructed $7,139,940.72 and $5,642,342.79. The self-construction portion, therefore, obviously was a substantial part of the gross. The equipment depreciation for those years, to the extent allocated to use in construction and capitalized on the taxpayer's books, amounted to $150,047.42 and $130,523.99, respectively. These were the depreciation amounts deducted for income tax purposes, the major portions of which are presently at issue.

equipment was so used but should be capitalized and recovered over the useful life of the assets constructed." 29 T. C. M., at 386. The Tax Court, accordingly, held that the Commissioner "properly disallowed as a deduction . . . this allocable portion of depreciation and that such amount should be capitalized as part of [taxpayer's] basis in the permanent improvements in the construction of which the equipment was used." *Ibid.*

The Court of Appeals, on the other hand, perceived in the Internal Revenue Code of 1954 the presence of a liberal congressional policy toward depreciation, the underlying theory of which is that capital assets used in business should not be exhausted without provision for replacement. 477 F. 2d, at 690–693. The court concluded that a deduction expressly enumerated in the Code, such as that for depreciation, may properly be taken and that "no exception is made should it relate to a capital item." *Id.,* at 693. Section 263 (a) (1) of the Code was found not to be applicable because depreciation is not an "amount paid out," as required by that section. The court found *Southern Natural Gas* unpersuasive and felt "constrained to distinguish" it in reversing the Tax Court judgment. 477 F. 2d, at 695–696.

The taxpayer asserts that its transportation equipment is used in its "trade or business" and that depreciation thereon is therefore deductible under § 167 (a) (1) of the Code. The Commissioner concedes that § 167 may be said to have a literal application to depreciation on equipment used in capital construction,[5] Brief for Petitioner

---

[5] For purposes of the issue here presented, the key phrase of § 167 (a) (1) is "property used in the trade or business." Construction of this phrase in the present context has been infrequent and not consistent. In *Great Northern R. Co.* v. *Commissioner,* 40 F. 2d 372 (CA8), cert. denied, 282 U. S. 855 (1930), the court held that where a railroad transported men and equipment to a construction site, the depreciation of the train attributable to the construction work was to

16, but contends that the provision must be read in light of § 263 (a) (1) which specifically disallows any deduction for an amount "paid out for new buildings or for

---

be capitalized. No consideration was given to whether the claimed deduction was available for property used in the taxpayer's trade or business. See also *Gulf, M. & N. R. Co.* v. *Commissioner,* 22 B. T. A. 233, 245–247 (1931), aff'd as to other issues, 63 U. S. App. D. C. 244, 71 F. 2d 953 (1934), aff'd, 293 U. S. 295 (1934); *Missouri Pacific R. Co.* v. *Commissioner,* 22 B. T. A. 267, 286–287 (1931); *Northern Pacific R. Co.* v. *Helvering,* 83 F. 2d 508, 513 (CA8 1936).

In a subsequent case, *Great Northern R. Co.* v. *Commissioner,* 30 B. T. A. 691 (1934), the Board of Tax Appeals reached the contrary result on identical facts. The Board held that the train equipment, even though used in part for construction of branch lines of the railroad, was used in *a* trade or business, and that this satisfied the requirements of the statute. The depreciation, therefore, was held deductible. *Id.,* at 708. This appears to have been the prevailing view until the issuance of Rev. Rul. 59–380, 1959–2 Cum. Bull. 87, where it was stated:

"In the instant case the capital improvements constructed constitute property to be used in the trade or business or property held for the production of income. However, the building equipment used in the construction cannot be considered as property used in the regular trade or business of the taxpayer." *Id.,* at 88.

Rev. Rul. 59–380 was in part the basis for the holding of the Court of Claims in *Southern Natural Gas Co.* v. *United States,* 188 Ct. Cl., 302, 378–379, 412 F. 2d 1222, 1268 (1969). The Court of Claims rejected the " 'a trade or business' " approach in favor of the rule that, to be deductible from current income, depreciation must be of property used in *the* trade or business of the taxpayer. Equipment, to the extent used by the taxpayer in construction of additional facilities, was not used in *the* trade or business of the natural gas company. Thus, no depreciation deduction was allowable and the contested amount of depreciation was to be capitalized.

In the instant case, the Court of Appeals concluded that transportation equipment used by the taxpayer to construct its own capital improvements was used in the trade or business of the taxpayer:

"The continuity and regularity of taxpayer's construction activities, the number of employees engaged in construction and the amounts

permanent improvements or betterments." He argues
that § 263 takes precedence over § 167 by virtue of what
he calls the "priority-ordering" terms (and what the tax-
payer describes as "housekeeping" provisions) of § 161
of the Code, 26 U. S. C. § 161,[6] and that sound principles
of accounting and taxation mandate the capitalization
of this depreciation.

It is worth noting the various items that are not at
issue here. The mathematics, as such, is not in dispute.
The taxpayer has capitalized, as part of its cost of acquisi-
tion of capital assets, the operating and maintenance costs
(other than depreciation, pension contributions, and
social security and motor vehicle taxes) of the trans-
portation equipment attributable to construction. This
is not contested. The Commissioner does not dispute
that the portion of the transportation equipment's de-
preciation allocable to operation and maintenance of fa-
cilities, in contrast with construction thereof, qualifies as
a deduction from gross income. There is no disagree-

expended on construction all point to the conclusion that construction
of facilities is a major aspect of the taxpayer's trade or business.
These activities are auxiliary operations incident to the taxpayer's
principal trade or business of producing, transmitting, distributing and
selling electrical energy within the meaning of section 167." 477 F.
2d, at 696.

Since the Commissioner appears to have conceded the literal ap-
plication of § 167 (a) to Idaho Power's equipment depreciation, we
need not reach the issue whether the Court of Appeals has given
the phrase "used in the trade or business" a proper construction.
For purposes of this case, we assume, without deciding, that § 167 (a)
does have a literal application to the depreciation of the taxpayer's
transportation equipment used in the construction of its capital
improvements.

[6] "§ 161. Allowance of deductions.

"In computing taxable income under section 63 (a), there shall be
allowed as deductions the items specified in this part, subject to the
exceptions provided in part IX (sec. 261 and following, relating to
items not deductible)."

ment as to the allocation of depreciation between construction and maintenance. The issue, thus comes down primarily to a question of timing, as the Court of Appeals recognized, 477 F. 2d, at 692, that is, whether the construction-related depreciation is to be amortized and deducted over the *shorter* life of the equipment or, instead, is to be amortized and deducted over the *longer* life of the capital facilities constructed.

## II

Our primary concern is with the necessity to treat construction-related depreciation in a manner that comports with accounting and taxation realities. Over a period of time a capital asset is consumed and, correspondingly over that period, its theoretical value and utility are thereby reduced. Depreciation is an accounting device which recognizes that the physical consumption of a capital asset is a true cost, since the asset is being depleted.[7] As the process of consumption continues, and depreciation is claimed and allowed, the asset's adjusted income tax basis is reduced to reflect the distribution of its cost over the accounting periods affected. The Court stated in *Hertz Corp.* v. *United States,* 364 U. S. 122, 126 (1960): "[T]he purpose of depreciation accounting is to allocate the expense of using an asset to the various periods

---

[7] The Committee on Terminology of the American Institute of Certified Public Accountants has discussed various definitions of depreciation and concluded that:

"These definitions view depreciation, broadly speaking, as describing not downward changes of value regardless of their causes but a money cost incident to exhaustion of usefulness. The term is sometimes applied to the exhaustion itself, but the committee considers it desirable to emphasize the cost concept as the primary if not the sole accounting meaning of the term: thus, *depreciation* means the cost of such exhaustion, as *wages* means the cost of labor." 2 APB Accounting Principles, Accounting Terminology Bulletin No. 1—Review and Resumé ¶ 48, p. 9512 (1973) (emphasis in original).

which are benefited by that asset." See also *United States* v. *Ludey,* 274 U. S. 295, 300–301 (1927); *Massey Motors, Inc.* v. *United States,* 364 U. S. 92, 96 (1960); *Fribourg Navigation Co.* v. *Commissioner,* 383 U. S. 272, 276–277 (1966). When the asset is used to further the taxpayer's day-to-day business operations, the periods of benefit usually correlate with the production of income. Thus, to the extent that equipment is used in such operations, a current depreciation deduction is an appropriate offset to gross income currently produced. It is clear, however, that different principles are implicated when the consumption of the asset takes place in the construction of other assets that, in the future, will produce income themselves. In this latter situation, the cost represented by depreciation does not correlate with production of current income. Rather, the cost, although certainly presently incurred, is related to the future and is appropriately allocated as part of the cost of acquiring an income-producing capital asset.

The Court of Appeals opined that the purpose of the depreciation allowance under the Code was to provide a means of cost recovery, *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1, 13–14 (1909), and that this Court's decisions, *e. g., Detroit Edison Co.* v. *Commissioner,* 319 U. S. 98, 101 (1943), endorse a theory of replacement through "a fund to restore the property." 477 F. 2d, at 691. Although tax-free replacement of a depreciating investment is one purpose of depreciation accounting, it alone does not require the result claimed by the taxpayer here. Only last Term, in *United States* v. *Chicago, B. & Q. R. Co.,* 412 U. S. 401 (1973), we rejected replacement as the strict and sole purpose of depreciation:

"Whatever may be the desirability of creating a depreciation reserve under these circumstances, as a matter of good business and accounting practice,

the answer is . . . [d]epreciation reflects the cost of an existing capital asset, not the cost of a potential replacement.' " *Id.*, at 415.

Even were we to look to replacement, it is the replacement of the constructed facilities, not the equipment used to build them, with which we would be concerned. If the taxpayer now were to decide not to construct any more capital facilities with its own equipment and employees, it, in theory, would have no occasion to replace its equipment to the extent that it was consumed in prior construction.

Accepted accounting practice [8] and established tax principles require the capitalization of the cost of acquiring a capital asset. In *Woodward* v. *Commissioner*, 397 U. S. 572, 575 (1970), the Court observed: "It has long been recognized, as a general matter, that costs incurred in the acquisition . . . of a capital asset are to be treated as capital expenditures." This principle has obvious application to the acquisition of a capital asset by purchase, but it has been applied, as well, to the costs incurred in a taxpayer's construction of capital facilities. See, *e. g.*, *Southern Natural Gas Co.* v. *United States, supra; Great Northern R. Co.* v. *Commissioner*, 40 F. 2d 372 (CA8), cert. denied, 282 U. S. 855 (1930); *Coors* v. *Commis-*

---

[8] The general proposition that good accounting practice requires capitalization of the cost of acquiring a capital asset is not seriously open to question. The Commissioner urges, however, that accounting methods as a rule require the treatment of construction-related depreciation of equipment as a capital cost of the facility constructed. Indeed, there is accounting authority for this. See, *e. g.*, W. Paton, Asset Accounting 188, 192–193 (1952); H. Finney & H. Miller, Principles of Accounting—Introductory 246–247 (6th ed. 1963) (depreciation as an expense should be matched with the production of income); W. Paton, Accountants' Handbook 652 (3d ed. 1943); Note, 1973 Duke L. J. 1377, 1384; Note, 52 N. C. L. Rev. 684, 692 (1974).

*sioner,* 60 T. C. 368, 398 (1973); *Norfolk Shipbuilding & Drydock Corp.* v. *United States,* 321 F. Supp. 222 (ED Va. 1971); *Producers Chemical Co.* v. *Commissioner,* 50 T. C. 940 (1968); *Brooks* v. *Commissioner,* 50 T. C. 927, 935–936 (1968), rev'd on other grounds, 424 F. 2d 116 (CA5 1970).[9]

There can be little question that other construction-related expense items, such as tools, materials, and wages paid construction workers, are to be treated as part of the cost of acquisition of a capital asset. The taxpayer does not dispute this. Of course, reasonable wages paid in the carrying on of a trade or business qualify as a deduction from gross income. § 162 (a)(1) of the 1954 Code, 26 U. S. C. § 162 (a)(1). But when wages are paid in connection with the construction or acquisition of a capital asset, they must be capitalized and are then entitled to be amortized over the life of the capital asset so acquired. *Briarcliff Candy Corp.* v. *Commissioner,* 475 F. 2d 775, 781 (CA2 1973); *Perlmutter* v. *Commissioner,* 44 T. C. 382, 404 (1965), aff'd, 373 F. 2d 45 (CA10 1967); *Jaffa* v. *United States,* 198 F. Supp. 234, 236 (ND Ohio 1961). See Treas. Reg. § 1.266–1 (e).

Construction-related depreciation is not unlike expenditures for wages for construction workers. The significant fact is that the exhaustion of construction equipment does not represent the final disposition of the taxpayer's in-

---

[9] Except for the Court of Appeals in the present case, the courts consistently have upheld the position of the Commissioner that construction-related depreciation is to be capitalized. *Great Northern R. Co.* v. *Commissioner,* 30 B. T. A. 691 (1934), upon which the Court of Appeals relied, is not to the contrary. In that case the Board concluded that construction-related depreciation was deductible under the Revenue Act of 1928, § 23 (k), 45 Stat. 800 (the provision corresponding to § 167 (a)(1) of the 1954 Code). The Commissioner in that case, however, had not argued for the capitalization of construction-related depreciation. 30 B. T. A., at 708.

vestment in that equipment; rather, the investment in the equipment is assimilated into the cost of the capital asset constructed. Construction-related depreciation on the equipment is not an expense to the taxpayer of its day-to-day business. It is, however, appropriately recognized as a part of the taxpayer's cost or investment in the capital asset. The taxpayer's own accounting procedure reflects this treatment, for on its books the construction-related depreciation was capitalized by a credit to the equipment account and a debit to the capital facility account. By the same token, this capitalization prevents the distortion of income that would otherwise occur if depreciation properly allocable to asset acquisition were deducted from gross income currently realized. See, e. g., *Coors* v. *Commissioner*, 60 T. C., at 398; *Southern Natural Gas Co.* v. *United States,* 188 Ct. Cl., at 373–374, 412 F. 2d, at 1265.

An additional pertinent factor is that capitalization of construction-related depreciation by the taxpayer who does its own construction work maintains tax parity with the taxpayer who has its construction work done by an independent contractor. The depreciation on the contractor's equipment incurred during the performance of the job will be an element of cost charged by the contractor for his construction services, and the entire cost, of course, must be capitalized by the taxpayer having the construction work performed. The Court of Appeals' holding would lead to disparate treatment among taxpayers because it would allow the firm with sufficient resources to construct its own facilities and to obtain a current deduction, whereas another firm without such resources would be required to capitalize its entire cost including depreciation charged to it by the contractor.

Some, although not controlling, weight must be given to the fact that the Federal Power Commission and the Idaho Public Utilities Commission required the taxpayer

to use accounting procedures that capitalized construction-related depreciation. Although agency-imposed compulsory accounting practices do not necessarily dictate tax consequences, *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 552, 562 (1932), they are not irrelevant and may be accorded some significance. *Commissioner* v. *Lincoln Savings & Loan Assn.,* 403 U. S. 345, 355–356 (1971). The opinions in *American Automobile Assn.* v. *United States,* 367 U. S. 687 (1961), and *Schlude* v. *Commissioner,* 372 U. S. 128 (1963), urged upon us by the taxpayer here, are not to the contrary. In the former case it was observed that merely because the method of accounting a taxpayer employs is in accordance with generally accepted accounting procedures, this "is not to hold that for income tax purposes it so clearly reflects income as to be binding on the Treasury." 367 U. S., at 693. See also *Cincinnati, N. O. & T. P. R. Co.* v. *United States,* 191 Ct. Cl. 572, 583–584, 424 F. 2d 563, 570 (1970). Nonetheless, where a taxpayer's generally accepted method of accounting is made compulsory by the regulatory agency *and* that method clearly reflects income,[10] it is almost presumptively controlling of federal income tax consequences.

---

[10] Section 446 of the Code, 26 U. S. C. § 446, reads in part as follows:

"§ 446.   General rule for methods of accounting.

"(a) General rule.

"Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

"(b) Exceptions.

"If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

The presence of § 263 (a)(1) in the Code is of significance. Its literal language denies a deduction for "[a]ny amount paid out" for construction or permanent improvement of facilities. The taxpayer contends, and the Court of Appeals held, that depreciation of construction equipment represents merely a decrease in value and is not an amount "paid out," within the meaning of § 263 (a)(1). We disagree.

The purpose of § 263 is to reflect the basic principle that a capital expenditure may not be deducted from current income. It serves to prevent a taxpayer from utilizing currently a deduction properly attributable, through amortization, to later tax years when the capital asset becomes income producing. The regulations state that the capital expenditures to which § 263 (a) extends include the "cost of acquisition, construction, or erection of buildings." Treas. Reg. § 1.263 (a)–2 (a). This manifests an administrative understanding that for purposes of § 263 (a)(1), "amount paid out" equates with "cost incurred." The Internal Revenue Service for some time has taken the position that construction-related depreciation is to be capitalized. Rev. Rul. 59–380, 1959–2 Cum. Bull. 87; Rev. Rul. 55–252, 1955–1 Cum. Bull. 319.

There is no question that the cost of the transportation equipment was "paid out" in the same manner as the cost of supplies, materials, and other equipment, and the wages of construction workers.[11] The taxpayer does not

---

[11] The taxpayer contends that depreciation has been held not to be an expenditure or payment for purposes of a charitable contribution under § 170 of the Code, 26 U. S. C. § 170, e. g., Orr v. United States, 343 F. 2d 553 (CA5 1965); Mitchell v. Commissioner, 42 T. C. 953, 973–974 (1964), or for purposes of a medical-expense deduction under § 213, 26 U. S. C. § 213, e. g., Gordon v. Commissioner, 37 T. C. 986 (1962). Section 263 is concerned, however, with the capital nature of an expenditure and not with its timing, as are the phrases "payment . . . within the taxable year" or "paid during the taxable

question the capitalization of these other items as elements of the cost of acquiring a capital asset. We see no reason to treat construction-related depreciation ' differently. In acquiring the transportation equipment, taxpayer "paid out" the equipment's purchase price; depreciation is simply the means of allocating the payment over the various accounting periods affected. As the Tax Court stated in *Brooks* v. *Commissioner*, 50 T. C., at 935, "depreciation—inasmuch as it represents a using up of capital—is as much an 'expenditure' as the using up of labor or other items of direct cost."

Finally, the priority-ordering directive of § 161—or, for that matter, § 261 of the Code, 26 U. S. C. § 261 [12]—requires that the capitalization provision of § 263 (a) take precedence, on the facts here, over § 167 (a). Section 161 provides that deductions specified in Part VI of Subchapter B of the Income Tax Subtitle of the Code are "subject to the exceptions provided in part IX." Part VI includes § 167 and Part IX includes § 263. The clear import of § 161 is that, with stated exceptions set forth either in § 263 itself or provided for elsewhere (as, for example, in § 404 relating to pension contributions), none of which is applicable here, an expenditure incurred in acquiring capital assets must be capitalized even when the expenditure otherwise might be deemed deductible under Part VI.

The Court of Appeals concluded, without reference to § 161, that § 263 did not apply to a deduction, such as that for depreciation of property used in a trade or busi-

---

year," respectively used in §§ 170 and 213. The treatment of depreciation under those sections has no relevance to the issue of capitalization here. See, *e. g.*, *Producers Chemical Co.* v. *Commissioner*, 50 T. C. 940, 959 (1968).

[12] "§ 261. General rule for disallowance of deductions.

"In computing taxable income no deduction shall in any case be allowed in respect of the items specified in this part."

ness, allowed by the Code even though incurred in the construction of capital assets.[13] We think that the court erred in espousing so absolute a rule, and it obviously overlooked the contrary direction of § 161. To the extent that reliance was placed on the congressional intent, in the evolvement of the 1954 Code, to provide for "liberalization of depreciation," H. R. Rep. No. 1337, 83d Cong., 2d Sess., 22 (1954), that reliance is misplaced. The House Report also states that the depreciation provisions would "give the economy added stimulus and resilience without departing from realistic standards of depreciation accounting." *Id.,* at 24. To be sure, the 1954 Code provided for new and accelerated methods for depreciation,

---

[13] The Court of Appeals relied on *All-Steel Equipment, Inc.* v. *Commissioner,* 54 T. C. 1749 (1970), rev'd in part, 467 F. 2d 1184 (CA7 1972), in holding that § 263 was inapplicable to deductions specifically allowed by the Code. 477 F. 2d, at 693. In *All-Steel,* the Tax Court faced the question whether taxes, losses, and research and experimental expenses incurred in manufacturing inventory items were currently deductible and did not have to be capitalized. The Tax Court held that these items were deductible, and that the taxpayer's method of accounting did not clearly reflect income. The Court of Appeals, in contrast, held that certain repair expenses incurred in producing inventory could be deducted "only in the taxable year in which the manufactured goods to which the repairs relate are sold." 467 F. 2d, at 1186. We need not decide this issue, but we note that § 263 (a) (1) (B) excepts research and experimental expenditures from capitalization treatment, see *Snow* v. *Commissioner,* 416 U. S. 500 (1974), and that § 266 of the Code, 26 U. S. C. § 266, creates a further exception by providing taxpayers with an election between capitalization and deduction of certain taxes and carrying charges. The Tax Court, in discussing deductions for taxes, losses, and research and experimental expenditures, observed that "deductions expressly granted by statute are not to be deferred even though they relate to inventory or capital items." 54 T. C., at 1759. This statement, when out of context, is subject to overbroad interpretation and, as is evident from our holding in the present case, has decided limitations in application.

resulting in the greater depreciation deductions currently available. These changes, however, relate primarily to computation of depreciation. Congress certainly did not intend that provisions for accelerated depreciation should be construed as enlarging the class of depreciable assets to which § 167 (a) has application or as lessening the reach of § 263 (a). See Note, 1973 Duke L. J. 1386.

We hold that the equipment depreciation allocable to taxpayer's construction of capital facilities is to be capitalized.

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

MR. JUSTICE DOUGLAS, dissenting.

This Court has, to many, seemed particularly ill-equipped to resolve income tax disputes between the Commissioner and the taxpayers. The reasons are (1) that the field has become increasingly technical and complicated due to the expansions of the Code and the proliferation of decisions, and (2) that we seldom see enough of them to develop any expertise in the area. Indeed, we are called upon mostly to resolve conflicts between the circuits which more providently should go to the standing committee of the Congress for resolution.

That was the sentiment behind *Dobson* v. *Commissioner*, 320 U. S. 489, written by Mr. Justice Jackson and enthusiastically promoted by Mr. Justice Black, Mr. Justice Frankfurter, and myself. *Dobson,* save for egregious error and constitutional questions, would have left picayune cases such as the present one largely to the Tax Court, whose expertise is well recognized. But *Dobson* was short-lived, as Congress made clear its purpose that we were to continue on our leaden-footed pursuit of law and justice in this field. Internal Revenue Code of 1939, § 1141, as amended, 62 Stat. 991.

Now that we are on our own I disagree with the Court in disallowing the present claim for depreciation. A company truck has, let us say, a life of 10 years. If it cost $10,000, one would expect that "a reasonable allowance for the exhaustion, wear and tear" of the truck would be $1,000 a year within the meaning of 26 U. S. C. § 167 (a). That was the provision in the House Report of the 1954 Code when it said that it provided for "a liberalization of depreciation with respect to both the estimate of useful life of property and the method of allocating the depreciable cost over the years of service." [1] H. R. Rep. No. 1337, 83d Cong., 2d Sess., 22.

Not so, says the Government. Since the truck was used to build a plant for the taxpayer and the plant

---

[1] The Committee indicated that "reasonable" depreciation allowances include the straight-line method, the declining-balance method, or any other method that on an annual basis does not exceed the allowances on the declining-balance method. H. R. Rep. No. 1337, 83d Cong., 2d Sess., 22–23.

The purpose of providing more liberal depreciation allowances was explicitly stated:

"More liberal depreciation allowances are anticipated to have far-reaching economic effects. The incentives resulting from the changes are well timed to help maintain the present high level of investment in plant and equipment. The acceleration in the speed of the tax-free recovery of costs is of critical importance in the decision of management to incur risk. The faster tax writeoff would increase available working capital and materially aid growing businesses in the financing of their expansion. For all segments of the American economy, liberalized depreciation policies should assist modernization and expansion of industrial capacity, with resulting economic growth, increased production, and a higher standard of living.

"Small business and farmers particularly have a vital stake in a more liberal and constructive depreciation policy. They are especially dependent on their current earnings or short-term loans to obtain funds for expansion. The faster recovery of capital investment provided by this bill will permit them to secure short-term loans which would otherwise not be available." *Id.*, at 24.

has a useful life of 40 years, a lower rate of depreciation must be used—a rate that would spread out the life of the truck for 40 years even though it would not last more than 10. Section 167 (a) provides for a depreciation deduction with respect to property "used in the (taxpayer's) trade or business" or "held for the production of income" by the taxpayer. There is no intimation that § 167 (a) is not satisfied. The argument is rested upon § 161 which allows the deductions specified in § 167 (a) "subject to the exceptions" in § 263 (a) which provides:

"No deduction shall be allowed for—
"(1) Any amount paid out for new buildings or for permanent improvements or for betterments made to increase the value of any property or estate . . . ."

I agree with the Court of Appeals that depreciation claimed on a truck whose useful life is 10 years is not an amount "paid out" within the meaning of § 263 (a)(1). If "payment" in the setting of § 263 (a)(1) is to be read as including depreciation, Congress—not the courts—should make the decision.

I suspect that if the life of the vehicle were 40 years and the life of the building were 10 years the Internal Revenue Service would be here arguing persuasively that depreciation of the vehicle should be taken over a 40-year period. That is not to impugn the integrity of the IRS. It is only an illustration of the capricious character of how law is construed to get from the taxpayer the greatest possible return that is permissible under the Code.

The opinion of the Court of Appeals written by Judge Trask and concurred in by Judges Choy and McGovern, states my view of the law.

Depreciation on an automobile is not allowed as a charitable deduction, *Orr* v. *United States,* 343 F. 2d 553; *Mitchell* v. *Commissioner,* 42 T. C. 953, 973–974,

since it is not a "payment" within the meaning of
§ 170 (a)(1). Likewise depreciation on an automobile
used to transport the taxpayer's son to a doctor is not
deductible as a medical expense under § 213 because it
is not an expense "paid" within the meaning of the
section. *Gordon* v. *Commissioner*, 37 T. C. 986; *Calafut*
v. *Commissioner*, 23 T. C. M. 1431.[2]

The IRS, however, has ruled that depreciation on con-
struction equipment owned by a taxpayer and used in
its construction work must be capitalized.[3] That Reve-
nue Ruling, as the Court of Appeals held, is a legal
opinion within the agency, not a Regulation or Treasury
decision. It is without force when it conflicts with an
Act of Congress.[4] See *Bartels* v. *Birmingham*, 332 U. S.
126, 132.

---

[2] Where Congress has intended that depreciation be treated as an
expenditure it has stated so explicitly, *e. g.*, § 615 (a) of the Inter-
nal Revenue Code.

[3] Rev. Rul. 59–380, 1959–2 Cum. Bull. 87, 88.

"[D]epreciation sustained on construction equipment owned by
a taxpayer and used in the erection of capital improvements for
its own use is not an allowable deduction, but shall be added to
and made a part of the cost of the capital improvements. So much
thereof as is applicable to the cost of depreciable capital improve-
ments is recoverable through deductions for depreciation over the
useful life of such capital improvements.

"In the instant case the capital improvements constructed con-
stitute property to be used in the trade or business or property
held for the production of income. However, the building equip-
ment used in the construction cannot be considered as property
used in the regular trade or business of the taxpayer."

[4] "[D]epartmental rulings not promulgated by the Secretary are of
little aid in interpreting a tax statute . . . ," *Biddle* v. *Commissioner*,
302 U. S. 573, 582. Indeed, each issue of the Internal Revenue
Bulletin warns that "Revenue Rulings . . . reported in the Bulletin do
not have the force and effect of Treasury Department
Regulations . . . ."

If the test under § 263 (a)(1) were the cost of capital improvements, the result would be different. But, as noted, the test is "any amount paid out," which certainly does not describe depreciation deductions unless words are to acquire esoteric meanings merely to accommodate the IRS. Congress is the lawmaker; and taking the law from it, we should affirm the Court of Appeals.