REGINALD R. HESS AND CYNTHIA S. HESS, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
HESS v. COMMISSIONER OF INTERNAL REVENUE
Docket No. 11036-92S
United States Tax Court
1994 U.S. Tax Ct. LEXIS 88; T.C. Summary Opinion 1994-79; May 4, 1994, Entered; March 30, 1994, Filed *88 Cost of petitioner's implant surgery was held to be depreciable. Decision was entered for petitioner. Cynthia S. Hess, Pro se.
Mark J. Miller, for respondent. Joan Seitz Pate, Special Trial Judge. Joan SeitzPate
DECISION
Pursuant to the determination of the Court as set forth in its T.C. Summary Opinion 1994-79, filed March 30, 1994, it is
ORDERED AND DECIDED that there are no deficiencies in petitioners' income tax for 1988.
Joan Seitz Pate
Special Trial Judge
ENTERED: MAY 4 1994
PATE, Special Trial Judge: This case was heard pursuant to the provisions of section 7463. [1]
Respondent determined a deficiency in petitioners' 1988 Federal income tax of $ 699. The sole issue for our decision is whether Cynthia S. Hess (hereinafter petitioner) may depreciate the cost of silicone breast implants (hereinafter implants) in connection with her business *89 as a professional exotic dancer. Respondent's disallowance of this depreciation increased petitioner's Schedule C income causing a concomitant increase in her self-employment tax pursuant to section 1401. The entire deficiency consists of the increased self-employment tax.
Some of the facts have been stipulated, and they are so found. Petitioners timely filed a joint income tax return for 1988. They resided in Fort Wayne, Indiana, at the time they filed their petition.
Petitioner has worked as a self-employed professional entertainer and exotic dancer since 1986. She obtained contracts to perform at various night clubs through a theatrical booking agency. The agency usually set her fee based on the number of nights she contracted to perform.
In 1986 and 1987, petitioner used the stage name "Tonda Marie". At that time, she grossed from $ 416 to $ 750 per week. In the summer of 1986, she underwent her first breast implant operation which augmented the size of her breasts a small amount.
At the urging of her agent, in 1988, petitioner underwent multiple medical procedures to replace and to substantially enlarge her implants, and which finally expanded her bust size to an abnormally *90 large size (56FF). The implants were so large that they each weighed approximately 10 pounds. During 1988, she was reintroduced into the market under the stage name of "Chesty Love". At that time her fees almost doubled.
In December of 1988, because of the added weight and imbalance created by the implants, petitioner slipped and fell on ice, rupturing one of her implants. Afterward, she contracted a severe bacterial infection and the implants had to be removed. As a result of the medical care necessary to treat the infection and to replace the implants, she could not work at all during 1989.
In 1991, petitioner received custom made implants in an even larger size (56N). Due to the enormous size of her breasts, she was featured on several television and radio talk shows, namely Sally Jesse Raphael, Howard Stern, and Tokyo Nippon. The Tokyo Nippon television show presents an annual program which features "freak-size" people from all over the world. Petitioner was chosen to have the "largest freakiest breasts", and they were measured on television. During a 20-week period, petitioner realized gross income in excess of $ 70,000.
As a result of her implants, petitioner suffered from *91 serious medical problems. During 1992, she was forced to return home after only 3 weeks of being "out on the road" because her body rejected the implants due to another bacterial infection. Again, the implants were surgically removed. At the time of trial, petitioner anticipated returning to work during 1993 after additional surgery and a new type of implant.
In addition to medical problems, petitioner and her husband were subjected to considerable humiliation because of the size of her breasts. Petitioner was ridiculed by people on the street, her husband suffered off-color comments and insults, and she was ostracized by most of her family. Consequently, when her career as a professional exotic dancer is over, petitioner plans to have the implants permanently removed.
On Schedule C of her 1988 income tax return, petitioner reported gross income of $ 55,090 and deducted various business expenses totaling $ 51,386. Included as part of her deductible business expenses was $ 2,088 of depreciation on the implants. In the notice of deficiency, respondent disallowed the depreciation deduction [2]; instead, she allowed petitioner a Schedule A medical expense deduction for the entire cost *92 ($ 5,368) of the implants.
Petitioner views the implants as a necessary "stage prop" that has demonstrably increased her earnings. She contends that she is entitled to depreciate her implants because they are assets used in her trade or business and she derives no personal benefit from them. Respondent maintains that the cost of the implants and resultant medical care are personal expenditures and, therefore, are deductible only as medical expenses.
In general, a taxpayer may deduct all the ordinary and necessary expenses paid during the taxable year in carrying on a trade or business. Sec. 162(a). Further, section 167 allows as a depreciation deduction a reasonable allowance for the wear and tear of property, but only if such property is used in a business or other income producing activity. Sec. 1.167(a)-1(a), Income Tax Regs. On the other hand, no deduction is allowed *93 for personal, living, or family expenses. Sec. 262. Moreover, when section 162 and 262 are in conflict, section 262 has been held to take precedence over section 162. Sharon v. Commissioner, 66 T.C. 515, 522-523 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978) (citing Commissioner v. Idaho Power Co., 418 U.S. 1, 17, 41 L. Ed. 2d 535, 94 S. Ct. 2757 (1974)).
In evaluating whether certain expenses are personal or qualify as business expenses under section 162, the courts generally have found that some expenses are so inherently personal they almost invariably come within the ambit of section 262. See, e.g., Fred W. Amend Co. v. Commissioner, 55 T.C. 320 (1970), affd. 454 F.2d 399 (7th Cir. 1971). Therefore, costs paid by a taxpayer in enhancing one's health or personal appearance, even though such costs were paid for business reasons, have been held not to be deductible as business expenses under section 162. See, e.g., Sparkman v. Commissioner, 112 F.2d 774 (9th Cir. 1940) (dentures to aid enunciation purchased by an actor and radio performer), affg. a Memorandum Opinion of this Court dated Mar. 13, 1939; Fred W. Amend Co. v. Commissioner, supra *94 (services of Christian Science practitioner paid to counsel employees); Drake v. Commissioner, 52 T.C. 842 (1969) (haircuts obtained by enlisted man in the U.S. Army); Bakewell v. Commissioner, 23 T.C. 803 (1955) (hearing aid purchased by a lawyer); Kelly v. Commissioner, T.C. Memo. 1991-605 (exercise equipment to enhance physical fitness and stamina of an accountant); Hastings v. Commissioner, T.C. Memo. 1982-583 (contact lenses for use by a salesperson); Fryer v. Commissioner, T.C. Memo. 1974-26 (haircuts for an airline pilot); and Evans v. Commissioner, a Memorandum Opinion of this Court dated March 8, 1939, (tonsillectomy to prevent colds suffered by a motion picture actress). The reasoning in all these cases emphasizes that the benefits from the expenditure were enjoyed by the taxpayer both in business and personal activities.
Respondent maintains that petitioner's implant surgery is inherently personal under section 262 and that therefore its cost is not depreciable. Unfortunately, neither section 262 or the regulations thereunder contain a definition of "personal". In a very early income *95 tax case, Sullivan v. Commissioner, 1 B.T.A. 93 (1924), the Board of Tax Appeals drew the distinction between business expenses and personal expenses, saying that:
The deduction authorized * * * [by the statutory predecessor of section 162] plainly contemplates necessary items of expense in conducting business, that is, growing out of and incurred solely in the furtherance of the business engaged in. Business expenses are those incurred in producing, or in the expectation of producing, revenues to the business, as distinguished from expenses incurred for the convenience, comfort, or economy of the individual in pursuing his business. They are the expenses necessarily incurred in the performance of his business duties, and not those incurred by the individual for his personal comfort or convenience.
Petitioner has shown that her implant surgery was "incurred solely in the furtherance of the business engaged in" and "incurred in producing revenues to the business". The sole reason she enlarged her breasts to such a horrendous size was to increase her success (and concomitantly her income) as a professional exotic dancer. In this endeavor petitioner has succeeded, *96 inasmuch as her fees have increased substantially since her implant surgery.
Moreover, these costs were not "incurred for the convenience, comfort, or economy of the individual in pursuing [her] business." The implants under consideration here are not those usual breast implants that women seek to enhance their personal appearance. Rather, petitioner, in pursuit of additional income, had inserted implants that augmented her breasts to such an extent that they made her appear "freakish". They were so large that they ruined her personal appearance, her health, and imposed severe stress on her personal and family relationships.
The cases detailed above are distinguishable. In all of these cases, the courts found that the medical procedures (tonsillectomy, dentures, hearing aid), the general health expenditures (Christian Science practitioner's fees, exercise equipment), and the grooming expenditures (haircuts), were expenses ordinarily expended by individuals in furtherance of good health and maintaining an attractive appearance and, thus, were inherently personal. In contrast, petitioner's expenditures were detrimental to her health and contorted her body into a grotesque appearance, *97 all for the purpose of making money. Thus, even though the implants were surgically made a part of her body, we are convinced that they were not inherently personal in nature.
Petitioner's expenditures for implants can be analogized to clothing expenditures which, as a general rule, are not deductible as a business expense even when specific types of clothing are a necessary condition of the business or employment. Mella v. Commissioner, T.C. Memo. 1986-594. However, there is a recognized exception to this rule when: (1) The clothing is required and essential in the taxpayer's business or employment; (2) the clothing is not suitable for general or personal wear; and (3) is not so worn. Yeomans v. Commissioner, 30 T.C. 757, 767 (1958).
Therefore, when clothing is useful only in a business environment, a deduction is allowable. See, e.g., Harsaghy v. Commissioner, 2 T.C. 484 (1943) (custom and usage forbade off duty wearing of nurse's uniform); Meier v. Commissioner, 2 T.C. 458 (1943), (unsanitary conditions made nurse's uniform unsuitable for general wear); Benson v. Commissioner, 2 T.C. 12 (1943), *98 affd. 146 F.2d 191 (9th Cir. 1944) (uniform of officer in California Highway Patrol). Of special significance to this case is the fact that costumes worn by theatrical performers are deductible. Denny v. Commissioner, 33 B.T.A. 738, 745 (1935); see Hynes v. Commissioner, 74 T.C. 1266, 1290 (1980).
Petitioner's line of business, that of a professional exotic dancer, was such that part of her "costume" was her freakishly large breasts. Her implants clearly satisfy the first two criteria set forth in Yeomans. As to the third, petitioner has proven that if she could remove her implants on a daily basis she would have done so as she preferred not to have "worn" them in her offstage personal life. However, this was physically impossible.
Because petitioner's implants were so extraordinarily large, we find that they were useful only in her business. Accordingly, we hold that the cost of petitioner's implant surgery is depreciable. [3]
*99 Reviewed and adopted as the report of the Small Tax Case Division.
Decision will be entered for petitioner. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. On the notice of deficiency, respondent incorrectly disallowed $ 5,368 of petitioner's Schedule C deductions.↩
3. The propriety of petitioner's method or rate of depreciation or the useful life of the implant surgery was not in issue.↩