The **CLEVELAND ELECTRIC ILLUMINATING COMPANY**

v.

The **UNITED STATES.**

No. 331–81T.

United States Claims Court.

Oct. 30, 1984.

Eric M. Oakley, Cleveland, Ohio, attorney of record for plaintiff. W.H. Lutz, T.G. Perris, Cleveland, Ohio, Fredrick L. Fisher, Columbus, Ohio, M.G. Meissner and Squire, Sanders & Dempsey, Cleveland, Ohio, of counsel.

Stella A. Gieseler, Washington, D.C., with whom was Asst. Atty. Gen., Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser, Washington, D.C., of counsel.

## OPINION ON INVESTMENT CREDIT ISSUE

PHILIP R. MILLER, Judge:

This portion of the plaintiff's suit is for refund of corporate income taxes of $18,-493 for 1970, $20,765 for 1971 and $31,303 for 1972. The claim is that for each of such years the Commissioner of Internal Revenue improperly denied plaintiff part of the investment credit to which it was entitled. The question presented is the validity of Treasury Regulations on Income Tax (1954 Code) (26 C.F.R.) §§ 1.46–3(c) and 1.48–1(b)(4). This provides in substance that, for investment credit purposes, where a taxpayer constructs for its own use property qualified for investment credit, utilizing construction equipment which itself qualified for investment credit, the taxpayer may not include, as a part of its investment in the self-constructed property, the depreciation sustained on the construction equipment during the construction.

### Statement

During the years in suit, in the course of its business of producing, distributing, and selling electrical energy and steam, plaintiff used its own equipment (primarily automotive) in constructing improvements and additions to its capital facilities. On its tax returns for these years, plaintiff claimed depreciation deductions and investment credit with respect to the equipment used to construct the capital facilities.

On audit, however, the Internal Revenue Service (I.R.S.) disallowed the deductions for depreciation of such equipment for the periods during which they were used in construction of plaintiff's capital facilities and included such sums in the cost of the capital facilities. These adjustments were in accordance with the rule in *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974) and Rev. Rul. 59–380, 1959–2 C.B. 87, and plaintiff does not dispute them. In addition, pursuant to Treas.Regs. §§ 1.46–3(c) and 1.48–1(b)(4), in the audit the I.R.S. made no adjustment in plaintiff's claimed investment credit on the purchase of the construction equipment, but it denied plaintiff additional investment credit for the amount of the depreciation of the construction equipment included in the cost of the capital facilities.

Plaintiff filed timely claims for refund contesting this denial of the additional investment credit and after denial of the claims timely filed this suit.

### Discussion

I.R.C. § 38 allows a credit against income tax for investments in certain depreciable property. Section 46 prescribes the amount of the credit which is a specified percentage of a taxpayer's "qualified investment." For the years at issue, the specified percentage was 7 percent. Section 46(c)(1) includes in "qualified investment" "the applicable percentages of the basis of each new section 38 property (as defined in section 48(b)) placed in service by the taxpayer during such taxable year." For public utility property, during the years at issue, such "applicable percentage" was zero for property having a useful life of less than 3 years, 19 percent for property having a useful life of 3 through 4 years, 38 percent for property having a useful life of 5 through 6 years and 57 percent for property with a useful life of 7 or more years.

The investment credit provisions of the Code (§§ 38 and 46–50) do not contain any special definition of basis, and Treas.Reg. § 1.46–3(c)(1) provides that "the basis of any new section 38 property shall be deter-

mined in accordance with the general rules for determining the basis of property. Thus, the basis of property would generally be its cost * * *." But it then adds as a qualification to this general rule:

However, for purposes of determining qualified investment, the basis of new section 38 property constructed, reconstructed, or erected by the taxpayer shall not include any depreciation sustained with respect to any other property used in the construction, reconstruction, or erection of such new section 38 property. (See paragraph (b)(4) of § 1.48–1.)

And § 1.48–1(b) further provides:

(4) If depreciation sustained on property is not an allowable deduction for the taxable year but is added to the basis of property being constructed, reconstructed, or erected by the taxpayer, for purposes of subparagraph (1) of this paragraph a deduction for depreciation shall be treated as allowable for the taxable year with respect to the property on which depreciation is sustained. Thus, if $1,000 of depreciation sustained with respect to property no. 1, which is placed in service in 1964 by taxpayer A, is not allowable to A as a deduction for 1964 but is added to the basis of property being constructed by A (property no. 2), for purposes of subparagraph (1) of this paragraph a deduction for depreciation shall be treated as allowable to A for 1964 with respect to property no. 1. However, the $1,000 amount is not included in the basis of property no. 2 for purposes of determining A's qualified investment with respect to property no. 2. See paragraph (c)(2) of § 1.46–3.

For the purpose of determining taxable income, it is now settled that depreciation incurred on equipment used in the self-construction of capital assets is not a deductible expense in the year of construction but is a cost of the constructed property to be included in its basis. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974); *Southern Natural Gas Co. v. United States*, 188 Ct.Cl. 302, 372–80, 412 F.2d 1222, 1264–69

(1969), and *Great Northern Ry. v. Commissioner*, 40 F.2d 372 (8th Cir.), *cert. denied*, 282 U.S. 855, 51 S.Ct. 31, 75 L.Ed. 757 (1930). Plaintiff contends that this automatically entitles it to investment credit on the constructed property for the amount of such depreciation even though it has already been allowed investment credit for the cost of the equipment and that the Treasury has no leeway to provide otherwise by regulation. Accordingly, plaintiff asserts, insofar as Treas.Regs. §§ 1.46–3(c)(1) and 1.48–1(b) exclude from investment credit for the cost of the self-constructed facility the depreciation on the construction equipment they are contrary to the statute and invalid.

The general rule with respect to the effect of Treasury Regulations has been aptly summarized in *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981):

These regulations command our respect, for Congress has delegated to the Secretary of the Treasury, not to this Court the task "of administering the tax laws of the Nation." *United States v. Cartwright*, 411 U.S. 546, 550 [93 S.Ct. 1713, 1716, 36 L.Ed.2d 528] (1973); accord, *United States v. Correll*, 389 U.S. 299, 307 [88 S.Ct. 445, 450, 19 L.Ed.2d 537] (1967); see 26 U.S.C. § 7805(a). We therefore must defer to Treasury Regulations that "implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. at 307 [88 S.Ct. at 450]; accord, *National Muffler Dealers Assn. v. United States*, 440 U.S. 472, 476–477 [99 S.Ct. 1304, 1306–1307, 59 L.Ed.2d 519] (1979). To put the same principle conversely, Treasury Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 [68 S.Ct. 695, 698, 92 L.Ed. 831] (1948); accord, *Fulman v. United States*, 434 U.S. 528, 533 [98 S.Ct. 841, 845, 55 L.Ed.2d 1] (1978); *Bingler v.*

*Johnson*, 394 U.S. 741, 749–751 [89 S.Ct. 1439, 1444–1445, 22 L.Ed.2d 695] (1969).

The court further stated that this "customary deference" has been found to be "particularly appropriate" where the statute is written in broad outline, and Congress, recognizing that it could not foresee the multifarious circumstances in which the statute would be applied, has delegated to the Secretary responsibility for filling in the interstices. See, e.g., I.R.C. §§ 453 (relating to accounting for income on installment sales), *Commissioner v. South Texas Co.*, 333 U.S. 496, 503, 68 S.Ct. 695, 699, 92 L.Ed. 831 (1948); 611(a) (permitting a reasonable allowance for depletion), *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. at 169, 101 S.Ct. 1037, at 1045; and 1502 (relating to consolidated returns of affiliated corporations), *American Standard, Inc. v. United States*, 220 Ct.Cl. 411, 417, 602 F.2d 256, 261 (1979); and *Garvey v. United States*, 1 Cl.Ct. 108, 113 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984). "[T]he objective sought in delegating rulemaking authority to an agency is to relieve Congress of the impossible burden of drafting a code explicitly covering every conceivable future problem." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 376, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). It has been stated that such rulemaking regulations are legislative in character and have the force and effect of law. *American Standard, Inc.*, 220 Ct.Cl. at 416, 602 F.2d at 260–61; *Union Electric Co. of Missouri v. United States*, 158 Ct.Cl. 479, 486, 305 F.2d 850, 854 (1962).

■■■ The regulations under discussion were promulgated by the Secretary of the Treasury pursuant to a delegation of rulemaking rather than merely interpretive authority by I.R.C. § 38(b):

The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B ["Rules for Computing Credit for Investment in Certain Depreciable Property", §§ 46–48].

It is determined herein that the regulations are not inconsistent with the clear meaning of the statute and are therefore valid.

First, it is not at all clear that the statute authorizes any investment credit for the depreciation of equipment used in the construction of new section 38 property. The purpose of the enactment of the investment credit was to stimulate *new investments* in depreciable property, not the shifting of all or part of the basis of preexisting investments or property for which the taxpayer has already received investment credit. This is reflected in the Congressional committee reports which urged adoption of the measure in the Revenue Act of 1962, 76 Stat. 960. The House Ways and Means Committee Report (H.R.Rep. No. 1447, 87th Cong., 2d Sess. 8 (1962), *reprinted in* 1962–3 C.B. 405, 412) explained:

The investment credit will stimulate investment because—as a direct offset against the tax otherwise payable—it will reduce the cost of acquiring depreciable assets. This reduced cost will stimulate additional investment since it increases the expected profit from their use. The investment credit will also encourage investment because it increases the funds available for investment. Generally, for each $100 of investment business, because of the tax credit, will have $8 more than otherwise would be the case for additional investment. Moreover, since the credit applies only to *newly acquired* assets [emphasis in original], *the incentive effect is concentrated on new investment and no revenue is lost in raising the profitability of assets already held by business firms.* In addition, it is the hope of the committee that the savings from the credit itself also will be used for *new investment* in further advancing the economy.[1] (Emphasis added.)

---

1. S.Rep. No. 1881, 87th Cong., 2d Sess. 11–12 (1962), U.S.Code Cong. & Admin.News 1962, 3297, 3314, *reprinted in* 1962–3 C.B. 707, 717–18, is similar.

The theory under which the depreciation of existing equipment used in the construction of a capital asset is deemed a part of the cost of the capital asset was explained by the Supreme Court in *Commissioner v. Idaho Power Co.*, 418 U.S. at 13–14, 94 S.Ct. at 2764–2765, as follows:

> [T]he exhaustion of construction equipment does not represent the final disposition of the taxpayer's investment in that equipment; rather, the investment in the equipment is assimilated into the cost of the capital asset construction.

The capitalized depreciation may appropriately be recognized as a part of the taxpayer's basis in the capital asset for purposes of depreciation and the computation of gain or loss on the sale of the capital asset, but it is not a new investment of additional funds by the taxpayer which it was the purpose of the investment credit provisions to stimulate.

That Congress intended primarily to give credit for the acquisition of new machinery with new funds may also be inferred from the facts that in the same Act it limited the credit for investment in used property acquired from others to $50,000 for any taxable year (§ 48(c)(2)) and it excluded from investment credit purchases of replacement property to the extent it was acquired with insurance proceeds or other compensation received for destroyed or stolen section 38 property (§ 46(c)(4)). Under these circumstances, it is difficult to assume that Congress meant to allow additional investment credit for the mere shift of part of the cost of property from the basis of one section 38 property to another.

Second, the clear purpose of the regulation at issue is to preclude the obtaining of two tax credits for a single investment, and the I.R.S. has confined the application of the regulation to that situation. Rev.Rul. 81–1, 1981–1 C.B. 18. There is a strong presumption that in the absence of specific contrary language Congress has not allowed a double credit for a single expenditure. Even with respect to a deduction from income (a lesser benefit), the Supreme Court has stated that "the [Internal Revenue] Code should not be interpreted to allow * * * 'the practical equivalent of double deduction,' * * * absent a clear declaration of intent by Congress" (*United States v. Skelly Oil Co.*, 394 U.S. 678, 684, 89 S.Ct. 1379, 1383, 22 L.Ed.2d 642 (1969), *reh'g denied*, 395 U.S. 941, 89 S.Ct. 1992, 23 L.Ed.2d 458 (1969)); and "[i]n the absence of a provision * * * definitely requiring it, a purpose [to allow double deductions] so opposed to precedent and equality of treatment * * * will not be attributed to lawmakers" *Charles Ilfeld Co. v. Hernandez*, 292 U.S. 62, 68, 54 S.Ct. 596, 598, 78 L.Ed. 1127 (1934). Since nothing in the Code sections pertaining to the investment credit nor its legislative history shows any intention by Congress to allow a double investment credit for the same expenditure, the intent to do so should not be imputed to Congress. Thus, this denial of the second credit is not in opposition to the statute.

Third, the Regulations 1.46–3(c)(1) and 1.48–1(b) represent a construction of the investment credit statute promulgated substantially contemporaneously with its enactment, which may be deemed to have been approved by Congress. The investment credit was added by the Revenue Act of 1962, Pub.L. 87–834, § 2, 76 Stat. 963 (Oct. 16, 1962) and amended by the Revenue Act of 1964, Pub.L. 88–272, Title II, 78 Stat. 32 (Feb. 26, 1964). The regulations in question were promulgated in T.D. 6731 filed May 7, 1964. Since that time Congress has amended the statute at least 20 times.[2] Between 1964 and the years at issue, this has included suspension of the investment credit in 1966,[3] its restoration in 1967,[4] its repeal in 1969,[5] and its reenact-

---

**2.** See notes to 26 U.S.C.A. §§ 46, 47 and 48.

**3.** Act of Nov. 8, 1966, Pub.L. 89–800, § 3, 80 Stat. 1508, 1514.

**4.** Act of June 13, 1967, Pub.L. 90–26, 81 Stat. 57.

**5.** Tax Reform Act of 1969, Pub.L. 91–172, § 703, 83 Stat. 487, 660.

ment in 1971.[6] On no occasion did Congress disapprove of the regulations at issue. Indeed, in 1975, when Congress in the course of consideration of a new provision broadening the qualified investment to be used for self-constructed property,[7] to include "qualified progress expenditures" incurred before the new equipment is placed in service, the legislative committees specifically stated that depreciation on equipment used in the construction of new section 38 property should not be included in "qualified progress expenditures" because they were not properly allowable in the basis of section 38 property for investment credit purposes generally, to wit:

> In the case of self-constructed property (i.e., property where it is reasonable to believe that the taxpayer will bear more than half of the construction costs directly) "qualified progress expenditures" will generally equal the costs incurred by the taxpayer which are properly chargeable to capital account in connection with that property (for purposes of the investment credit). Thus, qualified progress expenditures would not include any depreciation sustained with respect to other property (machinery, equipment, etc.) used in the construction of new section 38 property (because such depreciation is not part of the basis for purposes of section 38), nor generally would it include the adjusted basis of reconstructed property at the time the reconstruction is commenced.[8]

Under familiar principles of statutory construction, the regulations at issue are entitled to particular force both because they are "a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent" (*National Muffler Dealers Assn. v. United States*, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979), and *see also Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1

(1978)), and because of the intervening circumstances it is fair to impute to Congress approval of such regulations. *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981); *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 53, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955); *Helvering v. R.J. Reynolds Tobacco Co.*, 306 U.S. 110, 116–17, 59 S.Ct. 423, 426–27, 83 L.Ed. 536 (1939).

Finally, the validity of the regulations in dispute, insofar as they bar a double credit, has been upheld both by the Tax Court and the Court of Appeals for the Tenth Circuit. *United Telecommunications, Inc. v. Commissioner*, 65 T.C. 278 (1975) and supplemental decision, 67 T.C. 760 (1977), *aff'd*, 589 F.2d 1383 (10th Cir.1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2839, 61 L.Ed.2d 284 (1979). To the extent not already reflected in this opinion, this court fully agrees with the reasoning of the Court of Appeals for the Tenth Circuit.

Plaintiff contends that there is a conflict between the exclusion of the capitalized depreciation of the construction equipment from the basis of the constructed property and the decision in *Pacific Far East Line, Inc. v. United States*, 211 Ct.Cl. 71, 544 F.2d 478 (1976). However that decision does not support the plaintiff's arguments herein, and there is no conflict. There the court rejected the government's argument that because the source of a shipping company's investments in the construction of new ships was revenues which by statute had been excluded from gross income it was barred from receiving investment credit for the use of such funds. The government argued that the cost of the ships was not depreciable to the extent the funds used to construct the ships had not been subjected to income tax; and since investment credit was reserved for depreciable assets under I.R.C. § 48(a)(1) investment

---

6. Revenue Act of 1971, Pub.L. 92–178, § 101(a), 85 Stat. 497, 498.

7. I.R.C. § 46(d) added by the Tax Reduction Act of 1975, Pub.L. 94–12, § 302(a), 89 Stat. 36.

8. H.R.Rep. 19, 94th Cong., 1st Sess. 38 (1975), *reprinted in* 1975–1 C.B. 569, 584. The Senate committee report is substantially identical. S.Rep. 36, 94th Cong., 1st Sess. 46 (1975), *reprinted in* 1975–1 C.B. 611.

credit was not allowable. The court reasoned that the effect of the prior exclusions of the earmarked revenues from income was only to give the taxpayer accelerated depreciation deductions and "the fact that a portion of the cost of the ships is not depreciable because that cost has already been recovered through prior tax deferrals does not remove that portion from the investment tax credit." *Id.* at 88, 544 F.2d 478.

Similarly, increases in the basis of capital assets to reflect the exhaustion of a taxpayer's investment in construction equipment are also irrelevant to the purpose of the investment tax credit. In addition, in *Pacific Far East Line* there was no Treasury regulation on the subject. Here there is a Treasury regulation covering the disallowance, and the question is only as to the reasonableness of the regulation. In *Pacific Far East Line* there could be no question about whether or not the taxpayer had made a new investment of cash in a capital asset. Here the taxpayer seeks credit for depreciation of an existing asset. In *Pacific Far East Line* the taxpayer did not seek two credits for a single cash investment. Here the taxpayer asks for precisely that. In *Pacific Far East Line*, the taxpayer which had been a member of an industry favored by statute, would have been treated worse than others not so favored if in addition to having to relinquish depreciation allowances on construction with funds excluded from income it also was deprived of investment credit on the construction. Here there is no adverse treatment in derogation of a legislative purpose.

Plaintiff also argues that the result herein is unreasonable because the transportation equipment used in the construction had a shorter useful life than the constructed capital asset has. Since the amount of the investment credit varies with the length of the useful life, plaintiff claims that confining it to investment credit on the construction equipment deprives it of the larger amount. But this is hardly persuasive that it has been treated unreasonably. If it invested its funds in a truck having a 4-year life and entitling it to a net investment

credit of 1.33 percent (7 percent of 19 percent), and it then used the truck for half of its 5-year life in building generating plants, there is no overwhelming equitable reason why it should be entitled to credit of 3.99 percent (7 percent of 57 percent), whether in the alternative or in addition, for one-half the cost of the truck consumed in the construction.

Plaintiff further argues that the Treasury's position discriminates in favor of one who hires an independent contractor to construct a capital improvement and against one who constructs his own facilities, because in the former situation the contractor includes the depreciation of the construction equipment in the owner's cost and thus enables the owner to obtain investment credit thereon, while in the latter situation the Treasury denies it to the owner. However, in making the comparison plaintiff loses sight of the offsetting features that one who engages in self-construction with his own equipment also retains the investment credit on his own equipment and saves on the contractor's profit markups.

Plaintiff's argument that by selling the construction equipment and using the proceeds to hire an independent contractor to construct the facilities it would have received larger investment credit on the facility also ignores the fact that its investment credit on the equipment would have been subject to partial recapture if it were sold before the end of its useful life and presumably would have resulted in scant proceeds if sold thereafter. More important, plaintiff's contentions as to various alternatives in which it could have engaged which would have resulted in lesser taxes are irrelevant. For, as the Supreme Court stated in *Commissioner v. National Alfalfa Dehydrating & Milling Co.,* 417 U.S. 134, 149, 94 S.Ct. 2129, 2137, 40 L.Ed.2d 717 (1974):

This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether con-

templated or not, [citations omitted] and may not enjoy the benefit of some other route he might have chosen to follow but did not.

### Conclusion

For the foregoing reasons, the plaintiff's claims for additional investment credit for the taxable years 1970–72, will be dismissed.