**SOUTHLAND ROYALTY COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 476–88T.**

United States Claims Court.

Feb. 14, 1991.

Louis Paine, Houston, Tex., atty. of record, for plaintiff. Herbert D. Simons, Frederick J. Tuthill, and Butler & Binion, of counsel.

Elizabeth D. DePriest, Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant. Mildred L. Seidman and David Gustafson, of counsel.

## OPINION

FUTEY, Judge.

This tax case is before the court on cross-motions for partial summary judgment pursuant to RUSCC 56. Plaintiff, Southland Royalty Company (Southland), seeks a refund of $17,333,294.96 in federal income taxes paid, plus $19,250,403.70 in assessed interest, for the calendar year 1980.[1] Plaintiff contends that the Internal Revenue Service (IRS) erroneously required Southland to recapture previously deducted intangible drilling and development costs (IDCs) after the transfer of nonoperating mineral property interests to shareholder trusts. Defendant maintains that plaintiff's transfer of overriding royalties to the shareholder trusts was a disposal of "oil, gas, and geothermal property" under § 1254 of the Internal Revenue Code of 1954[2] (Code), 26 U.S.C. § 1254, which triggered the recapture of previous IDC deductions. For the reasons stated below, plaintiff's motion for partial summary judgment is granted and defendant's cross-motion is denied.

### Factual Background

The facts underlying the present controversy are not in dispute. Plaintiff was the common parent of an affiliated group of corporations which filed a consolidated United States corporation federal tax return for the 1980 calendar year. During this time, plaintiff was a Delaware corporation with a principal place of business in Fort Worth, Texas. Plaintiff engaged in the acquisition, exploration, development, and operation of oil and gas properties. Plaintiff owned fee and leasehold mineral interests in various tracts of land located in the Permian Basin in Texas and the San Juan Basin in New Mexico (mineral properties).[3] As owner of these interests, plain-

---

1. The parties have stipulated to this amount. Joint Stipulation of facts—set one (stip.), ¶ 23.

2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in 1980.

3. The parties have stipulated, for purposes of the instant case, that plaintiff owned 100 percent of each fee or leasehold interest in the Permian and San Juan Basin mineral properties (mineral properties). Stip. ¶ 12.

tiff had the right, at its sole cost, to explore the mineral properties for oil and gas deposits, and to develop and produce any hydrocarbons discovered on the properties.[4]

Plaintiff conducted exploration and development activities on the mineral properties from January 1, 1976 to November 3, 1980. As a result of these activities, plaintiff incurred substantial intangible drilling and development costs. Plaintiff elected to deduct, rather than capitalize, these expenses on its federal income tax returns as permitted by § 263(c) of the Code.

On November 3, 1980, plaintiff created two fixed investment trusts, the Permian Basin Royalty Trust (Permian trust) and the San Juan Basin Royalty Trust (San Juan trust). Plaintiff conveyed a net overriding royalty interest, carved out of the fee and leasehold mineral interests in the Permian mineral properties,[5] to the Permian trust. In addition, plaintiff carved out a net overriding royalty interest in the San Juan mineral properties and conveyed this interest to the San Juan trust. The overriding royalty interest entitled the San Juan and Permian trusts to 75 percent of the gross proceeds from the sale of production from the mineral properties, net of production costs and excess production costs.[6] The trusts were divided into units equal to the outstanding shares of the corporation on the date on trust creation. The trust units were distributed to plaintiff's shareholders on a *pro rata* basis of one unit per share of stock.

Plaintiff continued to have the exclusive right to explore, develop, and operate the mineral properties after carving out the overriding royalties. Plaintiff also retained an "operating mineral interest" in the mineral properties as defined by § 614(d) of the Code. Furthermore, the overriding royalty interest conveyed to the shareholder trusts were "nonoperating mineral interests" under § 614(e) of the Code.[7]

Plaintiff requested an IRS ruling on the tax consequences of the royalty distributions. The IRS determined that the transfer of royalties to the trusts and distribution of trust units to the shareholders constituted a "distribution" under §§ 301 and 311 of the Code, such that plaintiff recognized no gain or loss from the transfer. The IRS characterized the Permian and San Juan trusts as grantor trusts within the definition of § 671. For tax purposes, the IRS treated unit holders as direct owners of the overriding trust royalties. The IRS also ruled that plaintiff's transfer of overriding royalties was not a "disposition of property" under §§ 47(a), 1245(a) and 1250(a). Plaintiff was, therefore, not required to recapture (recognize as ordinary income) deductions taken under §§ 1245 and 1250 for depreciation of real and personal property.[8]

Plaintiff also requested the IRS to determine whether Southland was required to recapture prior IDC deductions as a result

---

4. The fee and leasehold interests were "operating mineral interests" as defined in § 614(d) of the Code and Treasury Regulation (Treas.Reg.) § 1.614–2(b). In addition, plaintiff was an "operator" of the mineral properties under Treas. Reg. § 1.614–2(a). Stip. ¶ 12.

5. An "overriding royalty" refers to "an interest in oil and gas produced at the surface, free of the expense of production, and in addition to the usual landowner's royalty reserved to the lessor in an oil and gas lease." Williams and Meyers, *Manual of Oil and Gas Terms,* (7th ed. 1987), p. 674.

   A "carved out interest" is defined as "an oil payment or overriding royalty, conveyed by the owner of a greater interest." *Id.,* p. 117.

6. Exhibits (Exs.) E and F, ¶ 15.b. The Conveyances entitled each trust to 75 percent of all proceeds of oil, gas, and other hydrocarbons from plaintiff's fee and leasehold mineral interests, commencing November 1, 1980.

   Plaintiff also conveyed a 95 percent overriding royalty interest in its major Texas royalty interests to the Permian trust. However, plaintiff was not an "operator" of these properties and, therefore, did not deduct IDCs from the interests. Therefore, the conveyance has no bearing upon the instant case.

7. Stip. ¶ 21; transcript (tr.), pp. 8–10.

8. Stip. Exs. I–L. In all, the IRS issued four ruling letters. The letters are dated October 31, 1980, December 31, 1980, January 31, 1981, and February 27, 1981.

of the royalty distribution.[9] On February 24, 1986, the IRS District Director in Dallas concluded in a technical advice memorandum that plaintiff was required to recapture IDCs because (1) the property disposed of was "oil, gas, or geothermal property" within the meaning of § 1254(a)(3); and (2) the overriding royalties transferred to the trusts were carved out of the operating interests against which the IDCs were charged.

In its 1980 corporate income tax return, plaintiff did not report the recapture of any IDCs resulting from the transfer of overriding royalties to the shareholder trusts. Following an IRS audit, the Commissioner of Internal Revenue determined that plaintiff recognized an additional $37,681,076.00 in income. This figure represented the recapture of a *pro rata* portion of previously deducted IDCs chargeable to the mineral properties. On April 24, 1987, the IRS assessed a tax deficiency against plaintiff for $17,333,294.96, plus $19,250,403.70 in interest, for the calendar year 1980. Plaintiff paid this amount in full on May 17, 1987. Plaintiff, thereafter, filed a claim for a refund of the above amount. The Commissioner disallowed plaintiff's claim on March 2, 1988.

Plaintiff instituted an action in this court on August 11, 1988. The complaint is comprised of four counts. Count one seeks recovery for the alleged overpayment of taxes for the calendar year 1980. On July 3, 1990, plaintiff filed a motion for partial summary judgment on count one of the complaint. Defendant filed an opposition to plaintiff's motion and a cross-motion for partial summary judgment on September 19, 1990. The court heard oral argument on the cross-motions on December 13, 1990.

### Jurisdiction

Plaintiff seeks recovery for an alleged overpayment in federal income taxes. As such, the court has jurisdiction over the instant suit under the Tucker Act, 28

U.S.C. § 1491 (1982). *See Consolidated Edison Co. v. United States*, 133 Ct.Cl. 376, 135 F.Supp. 881 (1955), *cert. denied*, 351 U.S. 909, 76 S.Ct. 694, 100 L.Ed. 1444 (1956), *reh'g denied*, 352 U.S. 1019, 77 S.Ct. 552, 1 L.Ed.2d 562 (1957), *reh'g denied*, 364 U.S. 898, 81 S.Ct. 218, 5 L.Ed.2d 192 (1960).

### Summary Judgment

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law, the moving party is entitled to judgment. RUSCC 56; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the nonmovant's case. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences runs. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ To grant summary judgment in the present case, the court must determine, as a matter of law, whether § 1254 of the Code requires plaintiff to recapture previously deducted IDCs upon transfer of the nonoperating interests in the mineral properties to the shareholder trusts. The court is presented with questions of statutory interpretation. The court may rule on such interpretations as a matter of law. *McKart v. United States*, 395 U.S. 185,

---

**9.** Plaintiff requested a ruling on this matter on July 24, 1980. However, the IRS did not respond to plaintiff's request before the royalty distribution. Consequently, plaintiff withdrew

its request by letter of August 23, 1982. The IRS confirmed receipt of this letter on September 16, 1982. Plaintiff's opposition, App. C.

198, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969).

### Discussion

The sole issue before the court is whether plaintiff disposed of "oil, gas, and geothermal property" within the meaning of § 1254(a)(3) when it carved overriding royalties out of the mineral properties and transferred these royalties to the San Juan and Permian trusts for the benefit of its shareholders. If plaintiff's transfer of nonoperating interests to the trusts was not a disposition of "oil, gas, and geothermal property," then § 1254 does not apply to the transaction and plaintiff is entitled to a tax refund. If the transfer constituted a disposition of "oil, gas, and geothermal property," then § 1254 required plaintiff to recapture a *pro rata* portion of previously deducted IDCs chargeable to the mineral properties.

Section 1254 requires taxpayers who dispose of "oil, gas, or geothermal property" to treat the aggregate of expenditures deducted under § 263 (as well as other sections inapplicable to the present case) as ordinary income.[10] Section 1254(a)(3) provides the following definition of "oil, gas, or geothermal property:"

(3) OIL, GAS, OR GEOTHERMAL PROPERTY.—The term "oil, gas, or geothermal property" means any property (within the meaning of section 614) with respect to which any expenditures de-

scribed in paragraph (1)(A) are properly chargeable.

Section 1254(a)(3) sets forth two requirements for property to be considered "oil, gas, or geothermal property" subject to the recapture provision of § 1254(a)(1). First, the property must meet the § 614 definition of "property." Second, the property must be property to which IDCs are "properly chargeable."

■ Section 614 of the Code defines property as "each separate interest owned by the taxpayer in each mineral deposit in each separate tract or parcel of land." Section 614(a). The Treasury Regulations further define the term "interest" to include "working or operating interests, royalties, [and] overriding royalties." Treas.Reg. § 1.614–1(a)(2). It is, therefore, apparent that the overriding royalties, i.e., the nonoperating interests which plaintiff carved out of the mineral properties, are well within the § 614 definition of "property." This point is not disputed by the parties.[11]

■ Addressing the second requirement of § 1254(a)(3), the parties agree that IDCs are only "properly chargeable" against operating (working) interests of the mineral properties, not against nonoperating (nonworking) interests.[12] Treas.Reg. § 1.612–4(a). Plaintiff reasons that the properties transferred to the shareholder trusts were not "oil, gas, or geothermal property" since these property interests were overriding royalties, not operating interests.[13] Respondent argues that the

---

**10.** Section 1254(a)(1) provides:

  (a) General Rule—
  (1) Ordinary Income.—If oil, gas, or geothermal property is disposed of after December 31, 1975, the lower of—
  (A) the aggregate amount of expenditure after December 31, 1975, which are allocable to such property and which have been deducted as intangible drilling and development costs under section 263(c) by the taxpayer or any other person and which (but for being so deducted) would be reflected in the adjusted basis of such property, adjusted as provided in paragraph (4), or
  (B) the excess of—
  (i) the amount realized (in the case of a sale, exchange, or involuntary conversion), or the fair market value of the interest (in case of any other disposition), over
  (ii) the adjusted basis of such interest,

shall be treated as gain which is ordinary income. Such gain shall be recognized notwithstanding any other provision of this subtitle.

**11.** Stip. ¶ 21.

**12.** Tr. p. 29.

**13.** The proposed regulations for § 1254 support plaintiff's interpretation of that section. Prop. Reg. § 1.1254–1(a)(3) provides:

  The term "oil, gas, or geothermal property" means each operating interest (within the meaning of section 614(b), relating to special rules as to operating mineral interests in oil and gas wells or geothermal deposits) *with respect to which any adjusted intangible drilling and development costs (as defined in paragraph (a)(2) of this section) are properly chargeable.*

properties transferred to the trusts were in fact "oil, gas, or geothermal property," since the royalties were carved out of the working interests against which the IDC deductions were charged.

■■■ The definition of "oil, gas, or geothermal property" under § 1254(a)(3) extends to property "with respect to which any expenditures described in paragraph (1)(A) [of § 1254] **are properly chargeable.**" Section 1254(a)(3), therefore, focuses on the property interest at the time of disposition, not at the time the IDCs were charged against the property interest. To determine otherwise would distort the plain meaning of the language of that section. At the time of transfer, plaintiff carved out overriding royalties from the San Juan and Permian mineral properties. Plaintiff retained all operating interests in these mineral properties. After the carve out, plaintiff continued to deduct 100 percent of the IDCs chargeable to the properties.[14] No IDC deductions could be taken by the trusts for the benefit of the shareholders because the transferred royalty interests were not working mineral interests. Since IDCs are not "properly chargeable" against nonoperating mineral interests, plaintiff did not dispose of "oil, gas, or geothermal property" when it transferred the overriding royalties to the shareholder trusts. Therefore, plaintiff did not recognize a gain under § 1254.

The court's interpretation of § 1254 is further supported by the legislative history of that section. The House report concerning § 1254 contains the following definition of "oil and gas property:"

A property is to be considered an oil and gas property only if intangible drilling and development costs are properly chargeable to that property (either in the hands of the taxpayer or his predecessor in interest). Thus, *an interest in a tract or parcel of land which is not an operating interest does not constitute an oil and gas property.* [Emphasis added.]

H.R.Rep. 658, 94th Cong., 1st Sess. at 90 (1975), U.S.Code Cong. & Admin.News 1976, 2897, 2985, reprinted in 1976–3 C.B. (Vol. 2) 695, 780.

The language in the above passage provides strong evidence that Congress intended to exclude nonoperating interests from the § 1254 definition of "oil, gas, or geothermal property."

■■ The United States Tax Court addressed the identical issue presently before the court in *Houston Oil and Minerals Corp. v. Commissioner,* 92 T.C. 1331 (1989). In *Houston Oil,* a corporation transferred overriding royalties, measured by net profits, to a trust in exchange for units of interest of the trust. The corporation distributed these units to the corporate shareholders. The IRS sought recapture of previously deducted IDCs from the corporation, contending that the transfer was a disposal of "oil, gas, or geothermal property" under § 1254. The Tax Court rejected this argument,[15] stating:

It is true that petitioner has less than it did before the transfers, but the lesser quantum of petitioner's interest is only in petitioner's right to the oil and gas produced from the leases. When petitioner

The court notes that the proposed regulations were never adopted and thus do not constitute controlling authority. *Elkins v. Commissioner,* 81 T.C. 669 (1983). Any reliance by plaintiff on the proposed regulations is misplaced. *Garvey, Inc. v. United States,* 1 Cl.Ct. 108, 118 (1983). The court will, therefore, not accord these regulations the "customary deference" reserved for promulgated regulations. *See e.g. Cleveland Elec. Illuminating Co. v. United States,* 6 Cl.Ct. 711 (1984) and cases cited therein.

**14.** As owner of an operating mineral interest, plaintiff bears the cost of exploration and development of the mineral properties. Stip. ¶ 19. Plaintiff, therefore, remains the primary risktaker with respect to these mineral properties.

As such, only plaintiff is entitled to deduct IDCs against the mineral properties. *Sun Co. & Subsidiaries v. Commissioner,* 74 T.C. 1481 (1980), *aff'd.* 677 F.2d 294 (3d Cir.1982).

**15.** The Tax Court reached the same conclusion in *Louisiana Land & Exploration Co. v. Commissioner,* 92 T.C. 1340 (1989), a companion case to *Houston Oil and Minerals Corp. v. Commissioner,* 92 T.C. 1331 (1989). Although Tax Court decisions are not binding on the Claims Court, the court will follow these decisions if the underlying rationale is persuasive. *See e.g. Mulholland v. United States,* 16 Cl.Ct. 252, 263 (1989).

transferred the overriding royalties to the trust, it created new property interests under section 614(a). It carved out overriding royalties which had previously been in solution in its working interests. But the interests which it carved out and transferred were not working interests. It has generally been accepted by the courts for many years that nonoperating mineral interests may be separated from operating mineral interests, and, when that occurs, the new mineral interests which are created take on only the character and rights of nonoperating mineral interests. [Citations omitted.] The mineral interests transferred to the trust were nonoperating mineral interests and were not properties against which IDC was chargeable as required by the definition in section 1254.

92 T.C. at 1336.

■ On appeal, the United States Court of Appeals for the Fifth Circuit recently upheld the *Houston Oil* decision. *Houston Oil and Minerals Corp. v. Commissioner,* 922 F.2d 283 (5th Cir.1991). In deciding that overriding royalty interests in oil and gas leases are not "oil, gas, or geothermal property" under § 1254, the Fifth Circuit declared:

The Commissioner urges us to ignore verb tense and instead focus on the expenditures referred to in § 1254(a)(3), i.e., the expenditures described in § 1254(a)(1)(A). [Footnote omitted.] Those expenditures include all IDCs that "have been deducted" and that "would be reflected in the adjusted basis of the property" if they had not been deducted. The IDCs at issue here meet both of those requirements. The Commissioner argues that any time IDCs meet those requirements, they must be recaptured. But this assertion sidesteps the fundamental question underlying this case: which property must be sold before the

IDCs are recaptured? The two tests in § 1254(a)(1)(A) determine only the amount of IDCs to be recaptured; they do not determine whether that amount is "properly chargeable" to any particular property interest.

\*　　\*　　\*　　\*　　\*　　\*

The plain words of Code § 1254(a)(3) lead us to conclude that we must consider the nature of the interest at the time of transfer and not at the time the expenses were deducted. Because IDCs are not properly chargeable to those nonworking interests, those interests are not oil, gas, or geothermal property and HOMC need not recognize a gain.

*Id.,* at 286. The court agrees with the approach taken in *Houston Oil* and concludes that § 1254 is inapplicable to the disposition of nonoperating mineral property interests carved out of operating mineral interests.

Defendant further asserts that this court must require plaintiff to recapture IDCs upon disposal of its nonoperating mineral interests in order to prevent possible tax abuse. Defendant states that "[i]f plaintiff's view were to prevail, the owner of an operating interest could, with impunity, strip the recapturable IDCs from the operating interest before disposing of it. Therefore, taxpayers would have a simple means of reducing, or possibly avoiding altogether, IDC recapture under Section 1254."[16] However, defendant does not allege that plaintiff has committed tax abuse. In fact, the parties have stipulated that the purpose of the royalty distribution was to enhance the value of shareholder investments, not to avoid tax liability.[17] The court recognizes the potential for tax abuse in limited situations, but notes that the opportunity for abuse has been sharply curtailed by the Tax Reform Act of 1986, Pub.L. 99–514, 100 Stat. 2085.[18] Since no

---

16. Defendant's cross-motion, p. 22.

17. Stip. ¶ 14.

18. The Tax Reform Act of 1986 amended the definition of "oil, gas, and geothermal property" to include "any property the basis of which has been adjusted for depletion deductions." The

amendment, therefore, brought nonoperating interests within the ambit of § 1254. Thus, if the royalty distributions had occurred after 1986, plaintiff would be required to recapture previously deducted IDCs. See *Houston Oil,* 92 T.C. at 1339 (1989).

532

tax abuse is evident in the present case, the court refuses to accept defendant's invitation to depart from the plain and unambiguous statutory language of § 1254(a)(3). *See Houston Oil and Minerals Corp.*, at 286.

Accordingly, the court concludes that plaintiff was not required by § 1254 of the Code to recapture previously deducted IDCs when it carved overriding royalties out of the working interests of the Permian and San Juan mineral properties and transferred these royalties to the Permian and San Juan trusts.

### Conclusion

For the foregoing reasons, the court grants plaintiff's motion for partial summary judgment and denies defendant's cross-motion for partial summary judgment. Plaintiff is entitled to a tax refund of $17,333,294.96 for the calendar year 1980, together with a tax refund of $19,250,403.70 for assessed interest, and statutory interest as calculated under 26 U.S.C. § 6611(a) and (b). Pursuant to RUSCC 54(b), the court determines that there is no justifiable reason to delay entry of judgment on count one of the complaint. The Clerk is, therefore, directed to enter judgment on this count.

The parties shall file a status report within 30 days, indicating further proceedings concerning counts 2–4 of the complaint.